**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JERMEKA THAMES and
JACQUEZ MOBLEY,

      Plaintiffs,      Case No. _____

v.           **JURY TRIAL DEMANDED**

THE REINFORCED EARTH COMPANY and
CDS RESOURCES, LLC,
      Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs JERMEKA THAMES ("**Plaintiff**" or "**Ms. Thames**") and JACQUEZ MOBLEY ("**Plaintiff**" or "**Mr. Mobley**"), by their undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendants THE REINFORCED EARTH COMPANY and CDS RESOURCES, LLC ("**Defendants**" or "**Reinforced Earth**" and **"CDS"),** and alleges as follows:

## INTRODUCTION

1. Plaintiffs bring this action pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("**Section 1981**").

2. Plaintiff Thames also brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. ("**Title VII**") to redress the Defendants' unlawful employment practices.

2. Plaintiffs seek monetary relief to redress Defendants' unlawful employment practices in violation of Section 1981 and Title VII for discriminating against Plaintiffs because of their race. Plaintiffs further seek punitive damages against Defendants CDS and Reinforced Earth for intentionally, directly, and willfully depriving

Plaintiffs of their constitutional and civil rights motivated by evil intent and/or reckless or callous indifference to their federal rights.

3.   At bottom, Defendants are liable for depriving Plaintiffs Thames and Mobley of their personal dignity and their civil and constitutional rights to pursue an equal employment opportunity in an environment free of discrimination.

## JURISDICTION AND VENUE

4.   The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights), and §1367 (supplemental jurisdiction).

5.   This Court has jurisdiction of the state and local claims herein pursuant to 29 U.S.C. § 1367, as this action involves state law causes of action arising from the same case or controversy as the federal claims herein.

6.   Venue is proper in the Southern District of Florida Miami Division under 28 U.S.C. § 1391(b) because the acts or omissions giving rise to this action occurred in the Southern District of Florida's jurisdiction. Defendants are and were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Plaintiffs were employed by Defendants within Miami-Dade County, Florida. Additionally, the events took place in Miami-Dade County, Florida.

## PROCEDURAL PREREQUISTES

6.   Plaintiff Thames has complied with all statutory prerequisites to file this action.

7.   On or about April 26, 2021, Plaintiff Thames dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant as set forth herein, Charge numbers 510-2021-03881 and 510-2021-03906.

8.  An EEOC filing automatically operates as a dual FCHR filing.

9.  On or about October 28, 2021, the EEOC issued a right to sue letter, and this action is being commenced.

10. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

11. This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendants.

## PARTIES

12. Plaintiff Jermeka Thames is an individual Black/African American woman residing in the State of Florida.

13. Plaintiff Jacquez Mobley is an individual Black/African American man residing in the State of Florida.

14. At all times material, Defendant THE REINFORCED EARTH COMPANY ("REINFORCED EARTH" and/or "Defendant"), was and still is a foreign for-profit corporation duly authorized and existing by the virtues and laws of the State of Florida.

15. At all times material, Defendant CDS RESOURCES, LLC ("CDS" and/or "Defendant"), was and still is a Florida Limited Liability Company duly authorized and existing by the virtues and laws of the State of Florida.

16. At all relevant times, ANDREW BEVERSTOCK ("Beverstock") was employed by Reinforced Earth as the CEO of the company, and held direct supervisory authority over Plaintiffs, controlling various terms and conditions of Ms. Thames's and Mr. Mobley's employment.

17.     At all relevant times, ROD BRIMMER ("Brimmer") was employed by Defendant Reinforced Earth as a Supervisor, and held direct supervisory authority over Plaintiffs, controlling various terms and conditions of employment.

18.     At all relevant times, GRISELLE CARABALLO ("Caraballo") was employed by Defendant CDS as Supervisor, and held direct supervisory authority over Plaintiffs, controlling various terms and conditions of their employment.

19.     At all relevant times, ANTHONY COGSWELL ("Cogswell") was employed by Reinforced Earth as a Lead Patcher.

20.     Defendants are employers as defined by all laws under which this action is brought and employs the requisite number of employees.

21.     Defendants' exact number of employees is unknown, but upon information and belief, there are well more than the statutory minimum.

22.     At all material times, Plaintiffs were employed by the Defendants in Miami-Dade County, Florida.

## **FACTUAL ALLEGATIONS**

23.     On or around January 4, 2019, Plaintiff THAMES was hired as a concrete patcher by Defendants.

24.     In or around April 2019, Plaintiff MOBLEY was hired as a concrete patcher by Defendants.

25.     As part of their employment, Plaintiffs worked projects outside alongside COGSWELL preparing concrete panels.

26.     During the course of their employment with Defendants, Plaintiffs were subjected to racial discrimination and a racially hostile work environment.

27. Further, Defendant Reinforced Earth was aware of the racial discrimination by way of its agents and employees, including knowledge of COGSWELL's repeated use of racial epithets in the workplace.

28. By means of example and not meant to be an exhaustive list, in or around May 2020, COGSWELL received written disciplinary action from Manager Frank (last name unknown) for not performing his work while on duty. Specifically, COGSWELL received disciplinary action for "stealing company time" because he was not engaged in his work duties while present at the worksite and receiving hourly pay.

29. After COGSWELL received this disciplinary action from Defendant Reinforced Earth, COGSWELL launched a campaign to "get Frank fired" and openly recruited African American, Black colleagues, including Plaintiffs, to falsely accuse FRIESZELL of using the term "**NIGGER**." Specifically, Cogswell told the employees, "**WE'RE GOING TO GET HIM WITH A NIGGER CLAIM**."

30. As a result of COGSWELL's attempts to lodge false claims against FRIESZELL, several employees, including Plaintiff Thames, approached Defendant Reinforced Earth's managers to report COGSWELL's plan and use of racial slurs. Plaintiffs are unaware of any action taken in response to these reports.

31. On or about May 18, 2020, Defendant Reinforced Earth hired COGSWELL's girlfriend (Name Unknown) as a Panel Setter and paired her to work with Plaintiff MOBLEY.

32. After a few days of work, Plaintiff MOBLEY, having performed the majority of the work for his joint project with GOGSWELL's girlfriend, complained to Plaintiff Thames that COGSWELL's girlfriend was not doing her fair share on projects.

33.   Notably, at all relevant times, Defendant Reinforced Earth maintained a policy instructing its employees to attempt to resolve any issues and disputes among themselves before bringing it to the management's attention.

34.   With this policy in mind, on or about May 25, 2020, Plaintiff Thames spoke to COGSWELL about his girlfriend's work performance while outside on the jobsite. At this time, COGSWELL did not respond, and his girlfriend's performance did not improve. In fact, COGSWELL's girlfriend often spent her shift speaking on her cell phone with friends and family.

35.   On or about May 27, 2020, Plaintiffs again requested COGSWELL's girlfriend perform her work duties, as her failure to perform her work was directly impeding their ability to complete their assignments.

36.   Moments after the conversation began, COGSWELL approached and began arguing with Planitiff MOBLEY and instructing him to stop his complaints about his girlfriend. Specifically, COGSWELL told Plaintiff MOBLEY, in words to the effect of, **"FUCK YOU NIGGER!  YOU AND YOUR MISERABLE ASS MOTHER WORK FOR ME! GET BACK TO WORK, BOY!"**

37.   Plaintiff Thames was present during the confrontation between COGSWELL and MOBLEY and attempted to diffuse the situation by removing MOBLEY from the area. Plaintiff Thames' attempts were unsuccessful, however, as COGSWELL followed Plaintiffs THAMES and MOBLEY across the worksite and continued to shout insults and racial slurs.

38.   At this time, Plaintiff Thames went inside Defendant Reinforced Earth's central facility and immediately requested BRIMMER break up the argument outside.

39.     In response, BRIMMER and BEVERSTOCK accompanied Plaintiff Thames outside where COGSWELL was still actively berating Plaintiff MOBLEY, including continuing his use of the term "**NIGGER**." COGSWELL's girlfriend was also present and began verbally attacking Plaintiff Thames when she saw her approaching with BRIMMER and BEVERSTOCK.

40.     As Plaintiff Thames approached the group with BRIMMER and BEVERSTOCK, COGSWELL's girlfriend yelled at Plaintiff, **"YOU ARE A LYING ASS BITCH, NIGGER!"** COGSWELL's girlfriend went on to shout the word **"NIGGER"** several more times in front of BEVERSTOCK and BRIMMER before screaming, throwing her equipment, and exiting the worksite. Several of Plaintiffs' coworkers witnessed and overheard both COGSWELL and his girlfriend's attacks and racial slurs.

41.     After COGSWELL's girlfriend left the area, BEVERSTOCK reacted by stating to Plaintiffs and the group, "**THIS FUCKING SHIT CAN'T HAPPEN**." BRIMMER then told Plaintiffs, "**THIS IS NOT RIGHT**."

42.     After the altercation, BEVERSTOCK and BRIMMER directed Plaintiffs work inside for the remainder of their shift in order to separate them from COGSWELL.

43.     After approximately one hour, BRIMMER approached Plaintiff Thames and again apologized about the altercation with COGSWELL and his girlfriend.

44.     Despite her best efforts to return to work, Plaintiff Thames felt mentally and physically ill due to the altercation with COGSWELL and his girlfriend and requested to leave her shift early. BRIMMER assured Plaintiff Thames that he would investigate the matter and approved her early departure.

45.     Later that day, Plaintiff MOBLEY contacted Defendant CDS to report the discrimination

and use of racial slurs. Importantly, Plaintiff MOBLEY submitted a statement

to Defendant CDS's Human Resources describing what occurred and expressly

complaining about COGSWELL and his girlfriend's discrimination.

Notably, Defendant CDS never asked Plaintiff Thames for her statement, despite learning

she was present for the altercation and willing to submit a statement.

46.     After Plaintiff MOBLEY's conversation with Defendant CDS's Human Resources, he

was assured by the Human Resources Representative that Defendant CDS would

investigate and take corrective action.

47.     In or around early June 2020, Plaintiff Thames returned to work at Defendant Reinforced

Earth.

48.     During one shift, Plaintiff Thames approached BRIMMER to inform him that she was

still distraught from the altercation and expressed that she found COGSWELL's behavior

and use of racial slurs "intolerable."

49.     The morning of or around June 12, 2020, BRIMMER approached Plaintiff Thames and

asked if she would like to be promoted to Lead Patcher. Because Plaintiff was still

emotionally distressed and exhausted from the incident with COGSWELL, she declined

BRIMMER's offer and expressly requested that Defendant Reinforced Earth take

corrective action to rectify COGWELL's behavior.

50.     That afternoon, Plaintiff witnessed COGSWELL speaking with BRIMMER in

BRIMMER's office. Confused and frightened for her safety, Plaintiff Thames spent the

remainder of her shift working outside the central facility to avoid coming into contact

with COGSWELL.

51.    On or around June 13, 2020, Plaintiff Thames again witnessed COGSWELL in the central facility, this time performing job duties inside.

52.    On or around June 15, 2020, Defendant Reinforced Earth instructed COGSWELL to work alongside Plaintiff MOBLEY, despite the altercation and Plaintiff MOBLEY's expressed discomfort at the work assignment.

53.    On or around June 16, 2020, COGSWELL's girlfriend returned to work at Defendant Reinforced Earth.

54.    In her first shift back, COGSWELL's girlfriend approached Plaintiff and her son and shouted, "**PUSSY ASS BITCH!**" Several employees witnessed this interaction.

55.    On June 17, 2020, Plaintiff Thames again complained to BRIMMER and expressed that she felt COGSWELL had not received fair corrective action in proportion to the severity of his actions. In response, BRIMMER told her to "just go home."

56.    Almost immediately after her conversation with BRIMMER, Plaintiff Thames approached BEVERSTOCK to express the same sentiment. However, as she waited for a meeting with BEVERSTOCK, she explained the altercation to ARCADIA KINSLEY (hereinafter referred to as "KINSLEY"), another employee at Defendant who was present outside BEVERSTOCK's office at the time.

57.    In response, KINSLEY informed Plaintiff that she had experienced similar race discrimination and use of racial slurs at Defendant Reinforced Earth, but that Plaintiff Thames was "**WASTING HER TIME**" pursing her complaints as "**NOTHING [WAS] GOING TO HAPPEN**." KINSLEY instead instructed Plaintiff to "**SUCK IT UP.**"

58.  Plaintiff Thames left Defendant's worksite as a result of this conversation but called BEVERSTOCK to request a time to speak with him about the altercation. BEVERSTOCK told Plaintiff Thames that he would speak with her the next day.

59.  On or about June 17, 2020, Plaintiff Thames met with CARABALLO at Defendant CDS to discuss the altercation at Defendant Reinforced Earth. During the conversation, CARABALLO cried at Plaintiff's recount and apologized for her experience. CARABALLO also assured Plaintiff Thames that she would ensure adequate corrective action was taken.

60.  Importantly, CARABALLO instructed Plaintiff to not report to work on June 18, 2020 to allow her to contact Defendant Reinforced Earth's management and discuss the situation.

61.  On or about June 18, 2020, per CARABALLO's recommendation, Plaintiff Thames did not attend work.

62.  On or around June 19, 2020, before Plaintiff's shift, CARABALLO called and instructed Plaintiff Thames to continue to not report to her shift at Defendant Reinforced Earth for that day. Plaintiff Mobley, however, continued to work as per his schedule.

63.  After her conversation with CARABALLO on or around June 19, 2020, Plaintiff Thames called BRIMMER and BEVERSTOCK to request an update regarding their investigation and Plaintiff Thames' return to work. Plaintiff Thames left several messages with both supervisors but did not receive any response.

64.  On June 22, 2020, Plaintiff Thames decided to return to work on her own accord. When she arrived to the worksite, Defendant Reinforced Earth, by and through its employees, denied Plaintiff Thames access and instructed Plaintiff to leave.

65.     Once Plaintiff left the worksite, she called Defendant CDS to receive an update on their investigation and to report the denial of entry to the worksite. However, Plaintiff Thames' calls were not returned by anyone at Defendant CDS.

66.     On or about June 24, 2020, Plaintiff Thames contacted the Human Resources Department of Defendant Reinforced Earth and emailed a statement of her account of the altercation, and of both Defendants' failure to take corrective action. Plaintiff Thames also reported that she feared she was being terminated for complaining of discrimination.

67.     On or about July 1, 2020, Erica (last name unknown), Human Resources Representative at Defendant Reinforced Earth, contacted Plaintiff Thames regarding her complaint. Erica (last name unknown) told her that although she had not heard about this particular incident, she was aware of COGSWELL's use of racial slurs from previous incidents and disclosed to Plaintiff Thames that he had received several disciplinary actions for similar behavior.

68.     At the end of the phone call, Erica (last name unknown) informed Plaintiff Thames that she would "do something about [the situation]." However, Plaintiff Thames did not hear back from any representative of the Human Resources Department at Defendant Reinforced Earth again.

69.     After her call with Erica, Plaintiff Thames was never contacted again by anyone at both Defendant Reinforced Earth or Defendant CDS. As a result, Plaintiff Thames' employment with both Defendants was terminated. Plaintiff Mobley remained employed.

70.     Beginning July 1, 2020, Plaintiff Thames was prohibited from entering Defendant Reinforced Earth's work site, even to drop Plaintiff Mobley off at the work site.

71.  As a result, Plaintiff Mobley was required to walk from the public access road to Defendant Reinforced Earth's work site, a two-mile distance, at five in the morning each day to get to work. This requirement was in further retaliation against Plaintiffs' complaints of discrimination, of which Defendants were fully aware.

72.  Defendants' actions and conduct were intentional and intended to harm Plaintiffs THAMES and MOBLEY.

73.  Defendants have established a pattern and practice of not only discrimination and harassment but also retaliation.

74.  The above are just some examples of the unlawful and discriminatory and harassing conduct and retaliation to which Defendants subjected Ms. THAMES and Mr. MOBLEY.

75.  Furthermore, Plaintiffs claim a continuous practice of discrimination and claim continuing violations and make all claims herein under the continuing violations doctrine.

76.  As a result of the acts and conduct complained herein, Ms. THAMES and Mr. MOBLEY have suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiffs also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. THAMES and Mr. MOBLEY have further experienced severe emotional and physical distress.

77.  As a result of Defendants' actions, Ms. THAMES and Mr. MOBLEY felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

78.  As Defendants' conduct had been malicious, willful, extreme and outrageous, and with full knowledge of the law, Ms. THAMES and Mr. MOBLEY respectfully seek all

available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, interest and punitive damages from all Defendants jointly and severally.

**COUNT ONE-**
***Race/Color Discrimination in violation of 42 U.S.C. § 1981***

79.     Plaintiffs reallege and incorporate by reference each allegation contained in the previous paragraphs 1-77, and further alleges as follows.

80.     42 U.S. Code § 1981 - Equal rights under the law states provides:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

81.     The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

82.     Defendants engaged in unlawful employment practices that violated 42 U.S.C §1981, by discriminating against Plaintiffs on account of Plaintiffs being of Black race.

83.     Defendants violated Section 1981 by intentionally discriminating against Plaintiffs in a
        serious tangible way with respect to compensation, terms, conditions or privileges of his
        employment.

84.     Plaintiffs' race characteristics were a determinative or motivating factor in Defendants'
        employment actions.

85.     Defendants cannot show any legitimate nondiscriminatory reason for their employment
        practices and any reasons proffered by the Defendants for their actions against
        Plaintiffs are pretextual and can readily be disbelieved.

86.     Plaintiffs' protected status played a motivating part in the Defendants' decisions even if
        other factors may also have motivated Defendants' actions against Plaintiff.

87.     Defendants' harassment and highly offensive conduct to Plaintiffs on account of
        Plaintiff's race adversely affected the terms, conditions, and privileges of
        Plaintiffs' employment.

88.     Defendants' conduct was adequately severe and pervasive so as to alter the work
        environment and create an abusive and hostile work environment for Plaintiff.

89.     Defendants acted upon a continuing course of conduct.

90.     Defendants enforced a purposefully discriminatory pattern and practice of depriving
        Plaintiffs, Black individuals, of the equal rights afforded to them, in violation of 42
        U.S.C. §1981.

91.     Defendants violated Section 1981, and Plaintiffs suffered numerous damages as a result.

92.     Plaintiffs make their claim against Defendants under all of the applicable paragraphs of
        42 U.S. Code § 1981.

93.  As a result of Defendants' violation of Section 1981, Plaintiffs have been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiffs' contractual relationship, which provided substantial compensation and benefits to the Plaintiffs.

94.  As a result of Defendants' violations of Section 1981, Plaintiffs have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

95.  Because the conduct complained of was malicious and willful, Plaintiffs demand punitive damages for the violation of their civil rights.

## COUNT TWO-
### *Retaliation in violation of 42 U.S.C. § 1981*

96.  Plaintiffs reallege and incorporate by reference each allegation contained in the previous paragraphs 1-77, and further allege as follows.

97.  Plaintiffs, as individuals of Black race, were discriminated against by Defendants on account of their race, in violation of Section 1981.

98.  Plaintiffs engaged in protected activity by complaining of the illegal conduct to the Defendants and opposing Defendants' unlawful actions.

99.  Plaintiffs were subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place, including unreasonable delays in his commission structure and his ultimate unlawful termination.

100. There was a causal connection between the Defendants' materially adverse actions and Plaintiffs' protected activity.

101.    The Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

102.    As a result of Defendants' violation of Section 1981, Plaintiffs have been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiffs' contractual relationship, which provided substantial compensation and benefits to the Plaintiffs.

103.    As a result of the Defendants' violations of Section 1981, Plaintiffs have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

104.    Conduct of Defendants and/or its agents deprived Plaintiffs of their statutory rights guaranteed under federal law.

105.    Plaintiff THAMES and Plaintiff MOBLEY have been damaged by the illegal conduct of Defendants.

**<u>COUNT THREE</u>**
*Race/Color Discrimination (Disparate Treatment)*
*in Violation of the TITLE VII*
**(as to Plaintiff Jermeka Thames <u>only</u> vs. all Defendants)**

106.    Plaintiff Thames realleges and incorporates by reference each allegation contained in the previous paragraphs 1-77, and further alleges as follows.

107.    Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

108.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §
        2000e *et seq.*, by discriminating against Plaintiff Thames because of her race.

109.    Defendants' Employees/Managers/Supervisors treated Plaintiff differently than her peers
        based on her race/color.

110.    The discriminatory actions of Defendant against Plaintiff, as described and set forth
        above, constitute an adverse employment action for purposes of Title VII.  In subjecting
        Plaintiff to adverse employment action on the basis of her race, Defendant
        intentionally discriminated against Plaintiff with respect to the compensation, terms,
        conditions, or privileges of her employment.

111.    Ms. THAMES was subject to discriminatory conduct and comments during her
        employment, and this conduct was directed to and perpetuated upon Plaintiff because of
        her race.

112.    The Defendants' discharge of Plaintiff was, in whole or in part, because she was
        Black/African American.

113.    At all times relevant, Defendants engaged in discriminatory practices which resulted in
        Plaintiff being subjected to a discriminatory hostile work environment in violation of
        Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended.

114.    Defendants treated Plaintiff less favorably than similarly situated employees outside the
        protected class.

115.    As a result of Defendants' violations of The Civil Rights Act of 1964, Plaintiff has
        suffered damages, including, but not limited to: past and future lost wages, mental pain
        and suffering; humiliation; emotional distress; diminishment of career opportunities;

harm to business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

116.   Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

117.   Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

118.   Plaintiff THAMES has been damaged by the illegal conduct of Defendants.

**<u>COUNT FOUR</u>**
***Retaliation***
***in Violation of the TITLE VII***
**(as to Plaintiff Jermeka Thames <u>only</u> vs. all Defendants)**

119.   Plaintiff Thames realleges and incorporates by reference each allegation contained in the previous paragraphs 1-77, and further alleges as follows.

120.   Title VII prohibits employment discrimination against an individual for opposing or complaining about unlawful discrimination and/or harassment.

121.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

122.   Plaintiff Thames opposed Defendants' discriminatory treatment by complaining to Defendants' management team about the unlawful racial discrimination of her coworker, COGSWELL.

123. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendants' employees had occurred.

124. At all times relevant, the unlawful discrimination by Defendants' employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

125. At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendants.

126. Following Plaintiff's opposition to Mr. Cogswell's conduct and his complaint to Defendants, the hostility increased dramatically.

127. Plaintiff opposed discriminatory conduct by Defendants which is prohibited by Title VII when she complained to Defendants about COGSWELL's racial harassment as described and set forth above.

128. Plaintiff's complaints involved Defendants' unlawful and discriminatory actions and therefore constituted protected activity under Title VII.

129. At all times relevant, Ms. Thames acted in good faith and with the objective and subjective belief that Defendants' employees violated of the law and her protected rights.

130. After expressing her opposition to the unlawful discriminatory conduct, Defendants retaliated against Plaintiff by among other things, wrongfully and unlawfully terminating Plaintiff's employment.

131. The adverse employment actions by Defendants were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Title VII.

132.   The discriminatory actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.

133.   In subjecting Plaintiff to adverse employment action on the basis of her race, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

134.   As a result of Defendants' violations of The Civil Right Act of 1964, Plaintiff Thames has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

135.   Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under federal law.

136.   Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

137.   Plaintiff THAMES has been damaged by the illegal conduct of Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgment against the Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation 42 U.S.C. §1981 and Title VII.

Dated:  Miami, Florida
            January 19, 2021

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

*/s/   Lauren Wilson, Esq.* _____
Lauren Wilson, Esq.
Florida Bar No. 1024850
Lauren@dereksmithlaw.com
701 Brickell Avenue, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
lauren@dereksmithlaw.com